CHARLES F. DANA *v.* JOHN A. CONANT; *Same v. Same ; Same v.* D. WARREN & CO.

*Liability of guarantor and indorser of promissory notes. Railroad stock. Evidence.*

If one, against whom a debt has been guaranteed by another to be good and collectible, becomes insolvent and destitute of attachable property before the debt becomes due, and thereafter remains so, it is not necessary, in order to charge the guarantor, to commence and carry through legal proceedings upon the debt against the principal.

Dana *v.* Conant et als.

If a party receive paper duly indorsed upon a guaranty that it is good and collectible, such guaranty has reference as much to the responsibility of the indorsers as of the principal; and if the indorsers are solvent, it is the duty of the holder to take the proper steps to charge them and collect the debt of them; and in such case, the guarantor is not liable until such steps have been taken.

A note was indorsed by a firm and pledged by them as collateral security to a creditor, whose claim was afterwards paid by A, one of the firm, with his own money, and the note was delivered by the creditor to him. Subsequently, and after the dissolution of the partnership, but before the maturity of the note, A delivered it, with the partnership indorsement still remaining thereon, to B in payment of his own individual debt. *Held,* that the partnership indorsement became legally extinct when A paid the pledgee's claim, and that the firm were not liable to B upon the note as indorsers.

*Held,* also, that B, who held a guaranty from A that the note was good and collectible, was not obliged, in order to hold A upon his guaranty, to take any steps to charge the firm as indorsers or to collect the note of them.

If one indorse a note to another, and at the same time guaranty that it is good and collectible, the holder may elect whether to treat the other as indorser or guarantor, or both, and if he elects to treat him as guarantor, and omits charging him as indorser, it is no defense to the guarantor's liability, that he was not charged and proceeded against as indorser.

A transferred to B a quantity of railroad bonds, notes, mortgages, stocks and other securities, among which were a number of shares of the preferred eight per cent. stock of the Rutland and Burlington Railroad Company. These securities were all enumerated in a schedule upon which A wrote and signed the following words: "The foregoing schedule of notes, stocks, bonds and securities are hereby transferred to B as his property, and I warrant the amount to be due, in each case as set forth, on the 1st day of October inst. *And I further agree that each claim and demand is absolutely good and collectible, and bind myself to make up any loss in the collections, should any occur;* and I also agree to transfer all the stocks and mortgages named therein." *Held,* that the preferred stock did not come within the language or meaning of the guaranty embraced in the foregoing words, and that A was not liable to B upon the said guaranty, for the failure or inability of the railroad company to pay the four per cent. semi-annual dividends stipulated in the certificates of such preferred stock.

If an action is brought upon a written contract, which is fully described in the declaration, and the contract is in the possession of the defendant, the plaintiff may introduce secondary evidence of its contents without previously giving a special notice to the defendant to produce it.

These were all actions of assumpsit, the first upon the guaranty hereafter described; the second upon the indorsement by the

defendant Conant, of a promissory note or bond, so called, of the Rutland and Burlington Railroad Company for one thousand dollars, dated July 1st, 1850, and payable to the defendant or order at Boston in four years from date, with interest payable semi-annually; and the third upon an indorsement by the defendants, D. Warren & Co., of another bond of the same company for one thousand dollars, dated July 1st, 1849, and payable to them or order at Boston in five years from date with interest semi-annually.

These cases were all referred to Hon. John S. Robinson and Hon. Loyal C. Kellogg, who reported the following facts:

The defendant Conant had been the guardian of the plaintiff for thirteen years previous to October 1st, 1851, about which time the plaintiff, who had just attained his majority, and Conant met to ascertain the amount of the plaintiff's funds in Conant's hands as guardian; and upon settlement there was found due the plaintiff from Conant the sum of sixty-nine thousand nine hundred and twenty-five dollars and ninety-eight cents ($69,925.98). Upon that occasion Conant exhibited to the plaintiff a schedule of securities, the portion of which, material to the questions in these cases, was as follows:

" 100 shares 8 per cent. preferred Rutland and Bur-
    lington Railroad stock,  - - - - - - - -  $10,000
    Cash, unpaid dividends, due October 1st,  - - - -    400
    Rutland and Burlington Railroad bonds,  - - - -  14,000 "
    etc., etc., etc., etc.

After some negotiation the plaintiff agreed to accept the securities enumerated in the schedule towards his claim against Conant, in consideration that the latter would execute to him the following guaranty, which was accordingly done at the foot of the schedule:

" The foregoing schedule of notes, stocks, bonds and securities are hereby transferred unto Charles F. Dana as his property, and I warrant the amount to be due, in each case as set forth, on the 1st day of October inst. And I further agree, that each claim and demand is absolutely good and collectible, and bind myself to make up any loss in the collections, should any occur, and I also agree to transfer all the stock and mortgages named therein. Dated at Brandon this 6th day of October, 1851.

                                          JOHN A. CONANT."

Dana *v.* Conant et als.

Conant then delivered the schedule with the notes, bonds, mortgages and stocks therein mentioned to the plaintiff.

The plaintiff, to support his claim upon this guaranty, read in evidence five promissory notes or bonds of the Rutland and Burlington Railroad Company, dated April 1st, 1850, for one thousand dollars each, four of which were payable to the defendants, D. Warren & Co., or order, and indorsed in blank by them, and one payable to the defendant Conant, or order, and indorsed in blank by him. All of these bonds became due in Boston on the 1st of April, 1854, when they were duly presented for payment, dishonored and protested for non-payment; but notice thereof was not seasonably given to charge either D. Warren & Co. or Conant, as indorsers. No evidence was introduced to show whether said bonds could or could not have been collected if seasonable notice had been given to charge the indorsers.

The plaintiff also read in evidence, under his claim upon the guaranty, the following certificate of stock:

"Rutland and Burlington Railroad Company, - - - $10,000
152    Preferred 8 per cent. stock, 100 shares.

"Be it known that Charles F. Dana of Boston, is the proprietor of one hundred shares in the preferred capital stock of the Rutland and Burlington Railroad Company, which shares are entitled to semi-annual dividends of four per cent. each until October 1st, 1860, after which time this certificate is to be surrendered, and one in the ordinary form issued in lieu thereof. These shares are transferable only on the books of the company by himself or his attorney, on surrender of this certificate.

"In witness whereof the President and Treasurer have hereunto set their hands and affixed the seal of the company,
[Seal] this 9th day of October, 1851.

"P. HARVEY, Treas.        T. FOLLETT, President."

On the 1st of August, 1854, the plaintiff notified the defendant Conant of the failure of the railroad company to pay the five bonds which fell due on the 1st of April, 1854, and also the dividends on the preferred stock, and required the payment of said bonds and dividends of him under his guaranty.

The plaintiff also claimed to recover upon the guaranty the amount due upon the bond, declared for in his other suit against

Conant, and also the amount due upon the bond declared for in his suit against D. Warren & Co.

The Rutland and Burlington Railroad Company failed on the 19th day of November, 1853, and became insolvent and destitute of any attachable property, and have so remained ever since.

The firm of D. Warren & Co. consisted of David Warren, John A. Conant, Ebenezer N. Briggs, and Chauncey W. Conant, and was formed February 16th, 1847, under written articles of copartnership, and expired three years thereafter by its own limitation. This firm began to close up their business several months previous to the time limited for the expiration of the partnership, and did no business as partners after that time, except in finishing the settlement of the partnership concerns. All the indorsements on the bonds in question, of the name of D. Warren & Co., were made by the defendant Conant. The five bonds, payable to D. Warren & Co., had been, at the time their indorsement was made upon them, pledged by that firm as collateral security for certain of their debts, which were subsequently paid by the defendant Conant's money, and the bonds so pledged were given up to him by the holder, and were, together with the two bonds indorsed by Conant, delivered by him to the plaintiff on the 6th of October, 1851, at the time of the execution of the aforesaid guaranty, in part settlement of his guardian account.

Upon the hearing before the referees, the plaintiff alleged that the two bonds due July 1st, 1854, upon which he claimed to charge D. Warren & Co. and the defendant Conant, respectively, as indorsers, were lost. It appeared that on the 1st of July, 1854, the plaintiff had both of said bonds in his possession, and left the same with a notary residing in Boston to present them at the office of the treasurer of the railroad company, for payment at their maturity. They were presented at the proper time, and payment being refused, written notices of their presentment and non-payment were deposited by the notary, in due season, in the postoffice at Boston, directed to D. Warren & Co. and John A. Conant at Brandon, which was the residence of all the defendants. The notice to D. Warren & Co. was in regard to the non-payment of the bond indorsed by them ; and the notice to John A. Conant was in regard to the non-payment of both of said bonds. The notary

Dana *v.* Conant et als.

then delivered the bonds, with the certificates of protest attached, to the plaintiff, who a few days afterwards inclosed them in an envelope addressed to the defendant Conant, and gave it to one John Wilhelm, a servant then employed by the plaintiff, to carry to the defendant Conant. It appeared by the plaintiff's testimony, that he afterwards inquired of Wilhelm respecting the envelope, but had not been able to recover either it or its contents, or to ascertain any thing respecting either; and that Wilhelm had removed to some place at the west, which was not known to the plaintiff; and also that the plaintiff had searched for the said bonds among his own papers, but had not been able to find them. There was no other testimony than the above tending to prove that Wilhelm ever delivered the envelope or its contents to the defendant Conant. All the defendants, D. Warren & Co. and Conant, insisted that the loss of the bond was not sufficiently proved by the foregoing testimony, and objected to the admission of parol evidence of the contents of the bonds and certificates of protest, without proof of notice to the defendant Conant to produce the same. But the referees overruled this objection, and admitted parol evidence of the existence and contents of the bonds and certificates of protest, from which they found the bonds to be as above described, and that they were duly protested, and notice of their non-payment seasonably given to D. Warren & Co. in the one case, and to the defendant Conant, in both cases.

Upon this report the county court, at the March Term, 1857,— KITTREDGE, J., presiding,— rendered judgment, *pro forma*, in each case, for the defendants. Exceptions by the plaintiff.

*S. H. Hodges* and *Linsley & Prout*, for the plaintiff.

*Charles L. Williams* and *E. N. Briggs*, for the defendants.

The opinion of the court was delivered by

PIERPOINT, J. These cases were referred, and the questions now before this court arise on the report returned by the referees to the county court, and on which judgment was then rendered for the defendants.

It appears from said report that for some thirteen years prior to

October, 1851, the defendant Conant had acted as the guardian of the plaintiff, he being a minor, and as such guardian had received a large amount of property belonging to the plaintiff; that about the 1st of October, 1851, and on the plaintiff's becoming of age, they met to settle the accounts of Conant with the plaintiff, as his guardian; that they settled their accounts and ascertained the amount due from Conant.

The defendant Conant then proposed to the plaintiff to transfer to him a large amount of securities, consisting of notes, bonds, stocks, mortgages, etc., to be received in payment upon the amount then found due. These securities the plaintiff agreed to accept, on condition that Conant would execute to him a guaranty, whereupon Conant drew, signed and attached to a schedule of said securities, a guaranty in the following words:

" The foregoing schedule of notes, stocks, bonds and securities, are hereby transferred to Charles F. Dana as his property, and I warrant the amount to be due in each case as set forth, on the 1st day of October instant; and I further agree that each claim and demand is absolutely good and collectible, and bind myself to make up any loss in the collection, should any occur; and I also agree to transfer all the stock and mortgages named therein."

This guaranty and the schedule, and the securities therein named were, on the 6th day of October, 1851, transferred and delivered to and accepted by the plaintiff in payment as aforesaid.

Among the securities and stocks so transferred, were five notes against the Rutland and Burlington Railroad Company, all payable April 1st, 1854; four of said notes were payable to D. Warren & Co., and bearing their indorsement, and one payable to Conant and indorsed by him. Also two other notes against said railroad company for one thousand dollars each, both falling due July 1st, 1854; one payable to D. Warren & Co., and indorsed by them, the other payable to Conant, and indorsed by him. On these last two notes the plaintiff has commenced suits, one against said D. Warren & Co., and one against Conant. Also one hundred shares (of one hundred dollars each) of the preferred capital stock of said railroad company, which shares were entitled to semi-annual dividends of four per cent. until October 1st, 1860.

On the 19th day of November, 1853, and before said notes

became due, said railroad company failed and became insolvent, and destitute of all attachable property, and have remained so, not paying any of said notes or the dividends on such stock.

It further appears from said report that no steps were taken by the plaintiff to charge the said D. Warren & Co. or Conant as the indorsers of said first five notes, by demand and notice of non-payment, or that any attempt had been made to enforce a collection of the same of the railroad company.

It also appears that a long time prior to the 6th day of October, 1851, when said securities were transferred to the plaintiff, the copartnership of D. Warren & Co. had been dissolved, and the defendant Conant was closing up its affairs; that before the dissolution, Conant, as one of the firm of D. Warren & Co., of which he was a member, had indorsed the said notes which were payable to the said company, on the occasion of turning them out as collateral security for the payment of an indebtedness of said company; that Conant subsequently paid such indebtedness with his own funds, and the notes were returned to him by such holder, and they were held by him until the said 6th day of October, when they were transferred to the plaintiff with the same indorsements thereon.

Upon this state of facts the first question for the consideration of this court, is as to the right of the plaintiff to recover the amount of the said five notes that fell due on the 1st of April, 1854, upon the aforesaid guaranty.

That the guaranty is applicable to this paper is not questioned, but it is insisted on the part of the defendant Conant, in the first place, that the plaintiff should have commenced legal proceedings against said railroad company, and attempted to enforce a collection of said demands of said company, and have failed therein before resorting to his guaranty. This claim, we think, is not well founded.

Conant agreed that the demands were "good and collectible," and "to make up any loss in the collection." To entitle the plaintiff to recover on this guaranty it is necessary for him to establish the fact that the said demands were not good and collectible at the time they fell due, as this is the plain and obvious meaning of the language used. To have issued attachments, obtained judgments and executions and a return of *nulla bona* would have furnished

Dana *v.* Conant et als.

evidence tending to show that said demands were not good and collectible, but would not be conclusive of that fact; the plaintiff might still be compelled to resort to other evidence to establish the insolvency of the debtor, and his inability to collect the demands. As the only fact necessary to be established is the insolvency of the debtor and his utter inability to pay the debt, it seems to us to be worse than useless to require the plaintiff to resort to a species of proof so expensive and dilatory in its manufacture, and which after all is not conclusive and may leave him, in the end, to resort to the same kind of proof to establish the fact, that was ready at hand in the outset. We see no reason why the insolvency of the debtor may not be established in a case like the present, by the same kind of proof that would be competent to establish the same fact in any other case, and when the utter insolvency and inability of the debtor to pay is established, it is sufficient to warrant a trier in finding the fact that a debt against him is not "good and collectible."

The insolvency of the railroad company as found by the referees, we think is sufficient to justify the plaintiff in not resorting to legal proceedings against them. This doctrine is recognized in *Wheeler* v. *Lewis*, 11 Vt. 265, and in the case of *Bull* v. *Bliss*, recently decided in Franklin county, not yet reported.*

It is further insisted on the part of Conant that inasmuch as the plaintiff did not take the necessary steps to charge the indorsers on this paper, by making demand and giving notice, he is discharged upon his guaranty.

There can be no doubt that when a party receives paper, duly indorsed, upon a guaranty like the present, such guaranty has reference as much to the responsibility of the indorsers as of the principal, and that the holder must take the necessary steps to charge the indorsers, and if the paper is good and collectible by reason of the responsibility of the indorsers alone, that is sufficient; and if he fails to do that which is necessary to make them liable, or to collect the pay of them, the guarantor is discharged.

The inquiry then is, were those notes, at the time of their delivery to the plaintiff, actually indorsed by D. Warren & Co.?

* See page 127.

The report shows that D. Warren & Co. once indorsed these notes to a third party as collateral security; the debt, to secure which they were holden, was paid by Conant, one of the firm, and the notes taken back and held until after the dissolution of the copartnership. Could Conant then transfer those notes so as to make D. Warren & Co. liable to the holder on such indorsement? The fact that the debt, to secure which they were holden, had been paid by him out of his own funds, gave him no lien or claim on these notes; that only made the company liable to him for the amount paid, to be adjusted in the settlement of the copartnership account, and, when the notes were returned, they became the property of D. Warren & Co. as though they had never been transferred, and the indorsements thereon were legally extinct. Conant, after the dissolution, could not re-transfer those notes so as to bind D. Warren & Co. by the old indorsement; neither could he bind them by a new one without the existence of some authority other than what appears to have existed in this case. We think, therefore, that when the plaintiff took these notes, he took them without any legal indorsement upon them, and was not bound to give D. Warren & Co. notice of their non-payment.

The report also shows that the plaintiff did not give Conant notice of the demand and non-payment of the one thousand dollar note, which was indorsed by him and which fell due on the 1st of April, 1854. The facts, as reported by the referees, show that when the plaintiff agreed to accept this note with the other securities, he did it relying on this guaranty of Conant, and that this note could not have been previously indorsed to the plaintiff. The indorsement and guaranty were simultaneous, and it would be doing great violence to the evident intent and understanding of the parties to regard the relations existing between them as to this note, as that of indorser and indorsee, and not that of guarantor and guarantee. At all events, if Conant by these simultaneous acts has placed himself in the two-fold position of guarantor and indorser, the plaintiff must certainly have the right to elect in which position he will regard him, especially as it can make no difference in this case on which ground he is made liable, if at all. And the plaintiff having elected to treat him as a guarantor, and discharge him as indorser, we think Conant cannot

now insist that he shall be treated simply as an indorser, and then be discharged from both obligations for want of notice.

As to the one hundred shares of the preferred capital stock of the said railroad company, we think it clear that stocks, as such, do not come within the language, or plain and obvious meaning of this guaranty. It is true, that the instrument refers to stock, but it is only in that part of it which specifies the character of the securities, or property contained in the schedule, and which by the instrument are transferred to the plaintiff.

In that part of the instrument which creates the obligation, and to which only the term guaranty can with propriety be applied, the words " claim and demand " only are used as descriptive of the property to which the guaranty attaches, and these words may be said to be still further limited to such claims and demands as the words " good and collectible," used in the sense in which they were used in this instrument, can fairly be applied. But it is claimed by the plaintiff, that this is not stock in fact, but is another and different species of property called by that name; that the real transaction between the railroad company and the owners of this species of property, by which it was created, is in the nature of a loan of the money to the corporation, upon an agreement on their part to pay four per cent. thereon semi-annually for a term of years, and then to pay the principal in stock of the corporation.

The referees have furnished us with no means of determining the nature and character of the transaction, except such as is contained in the schedule (in which it is called " stock "), and the certificate given by said corporation to the plaintiff, as the evidence of what property he had in the corporation. This certificate declares that the plaintiff " is the proprietor of one hundred shares in the preferred capital stock" of the corporation, which shares are entitled to semi-annual dividends of four per cent., and are transferable only on the books of the company, etc. It is quite clear that there is nothing on the face of these papers that will warrant us in saying, that this property is anything other than the stock of the corporation. The holder of this stock is entitled to four per cent. semi-annual dividend. This can give him no claim to that amount, except in the form of a dividend, to be declared by the officers of the corporation, according to their charter and the law,

Dana *v.* Conant et als.

and to be enforced as any other claim to a dividend. The corporation would be under no obligation to declare such a dividend, unless they had funds properly applicable to such purpose. The object of the corporation seems to have been, to give the holders of this class of stock a claim to a dividend of the amount specified, to the exclusion, if necessary, of the ordinary stock holder, and it is this priority of claim that gives to it the name of preferred stock, and it is in this respect that we can see that it varies from the ordinary stock of the corporation.

Regarding it in this light we are of the opinion that the plaintiff is not entitled to recover on this guaranty by reason of the neglect or inability of the corporation to declare and pay the dividends specified.

The only remaining question for us to determine is, whether the referees were justified in receiving parol evidence of the contents of the two one thousand dollar bonds or notes that fell due in July, 1854, and on which suits were brought by the plaintiff, one against D. Warren & Co., and one against Conant.

We think the evidence reported was sufficient to justify the referees in finding the loss of the bonds, or that they were in the possession of Conant. If the bonds were in the possession of Conant, was the plaintiff bound to give him notice to produce them before resorting to parol evidence of their contents? The actions were brought on these instruments, and they were fully described in the declaration, thus giving Conant full notice that they were relied on for a recovery, and he must have known that no recovery could be had without the production of the papers or proof of their contents, having them in his possession; the service of the writ and declaration on him is sufficient notice to allow the plaintiff to introduce parol evidence of their contents, if the defendant fails to produce them. We see no sufficient reason for interfering with the decision of the referees in this respect.

In the suit against the defendant Conant, upon the guaranty, the judgment of the county court is reversed, and judgment rendered for the plaintiff to recover the amount found due by the referees on the five notes that fell due in April, 1854, and on the one thousand dollar note, payable to D. Warren & Co., that became due on the 1st of July, 1854, and interest thereon from the time, to

18

which the referee had cast interest to the present time, to be cast by the clerk.

In the suit against the defendant Conant, as indorser of the bond for one thousand dollars due July 1st, 1854, the judgment of the county court is reversed and judgment entered for the plaintiff for the amount found due thereon by the referees, and interest.

In the suit against the defendants D. Warren & Co. the judgment of the county court is affirmed.